UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTIONETTE DELROSARIO,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 1:25-cv-01268-JLT-HBK<br>FINDINGS AND RECOMMENDATIONS TO REMAND CASE TO THE COMMISSIONER OF SOCIAL SECURITY [1]<br>(Docs. 15, 17)<br>FOURTEEN-DAY OBJECTION PERIOD |

Plaintiff Antionette DelRosario seeks judicial review of a final decision of the Commissioner of Social Security's final decision denying her application for supplemental security income under Title XVI of the Social Security Act. (Doc. 1). The matter was submitted on the parties' briefs without oral argument. (Docs. 15, 17, 18). For the reasons below, the undersigned recommends granting Plaintiff's motion for summary judgment, denying Defendant's cross-motion for summary judgment, and remanding for further administrative proceedings.

////

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2026).

## I. JURISDICTION

Plaintiff protectively filed her applications on February 25, 2023, alleging disability beginning June 10, 2009. (AR 223-32). At the hearing, she amended her alleged onset date to February 25, 2023. (AR 61). The applications were denied initially (AR 104-12, 127-31) and on reconsideration (AR 113-24, 137-44). Represented by counsel, Plaintiff testified at a telephonic hearing before an administrative law judge ("ALJ") on July 15, 2025. (AR 57-79). The ALJ issued an unfavorable decision (AR 14-36), and the Appeals Council denied review (AR 1-6). The Court has jurisdiction under 42 U.S.C. § 405(g).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the parties' briefs. Only the most pertinent facts are summarized here.

Plaintiff was 46 years old at the hearing. She had a high school diploma, some college, and no past relevant work. (AR 60, 73).

Plaintiff testified that shoulder pain and weakness prevented her from working. (AR 61-66). Despite left rotator cuff surgery, she continued to experience a "frozen shoulder." (AR 61-62). She reported pain, numbness, and weakness in both shoulders and difficulty raising her arms overhead or reaching behind her back. (AR 61-62, 65-66).

She testified she can use her left arm for approximately 10 minutes before requiring a 15-minute break. (AR 63-64). She could not carry a gallon of milk with that arm and could carry only a few loaves of bread. (AR 64). She identified her shoulder condition as her primary physical complaint but also reported back and neck pain, asthma, and depression. (AR 67-69).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). It is "more than a mere scintilla[,] but

less than a preponderance." *Id.* (quotation and citation omitted). The Court must consider the record as a whole rather than isolate evidence supporting the decision. *Id.*

A court may not substitute its judgment for the Commissioner's and must "uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Harmless error does not warrant reversal. *Id*. An error is harmless if it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party challenging the decision bears the burden of establishing harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. SEQUENTIAL EVALUATION PROCESS

To be considered disabled, a claimant must satisfy two conditions. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner applies a five-step sequential evaluation. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b). At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations. 20 C.F.R. § 416.945(a)(1). At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is incapable of performing such work, the analysis proceeds to step five, where the Commissioner considers whether, after considering the claimant's RFC, age, education, and past work experience, the claimant can perform other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant can perform other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 25, 2023, the application date. (AR 20). At step two, the ALJ found the following severe impairments: a left shoulder disorder, including impingement, osteoarthritis, and acromioplasty syndrome, with pain; depression; and asthma exacerbated by cigarette smoking. (AR 20). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments meeting or medically equaling a listed impairment. (AR 20).

The ALJ assessed the following RFC:

> [Plaintiff can] perform light work as defined in 20 CFR 416.967(b), specifically, the claimant can lift and carry and push and pull 20 pounds occasionally and 10 pounds frequently with the right dominant upper extremity, but she cannot lift or carry 20 pounds with the left nondominant upper extremity without assistance from the right dominant upper extremity. She cannot perform reaching overhead or behind her with the left nondominant upper extremity and she cannot climb ladders, ropes, or scaffolds, crawl, or kneel. She can occasionally climb stairs and ramps, stoop, and crouch, and

> she should avoid extreme cold and damp environments and prolonged exposure to respiratory irritants such as fumes, chemicals, and dust. In addition, she should work in good ventilation. Mentally, she can perform simple routine tasks.

(AR 21).

At step four, the ALJ found that Plaintiff had no past relevant work. (AR 30). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including housekeeping cleaner, cafeteria attendant, and routine clerk. (AR 30-31). The ALJ therefore concluded that Plaintiff has not been under a disability since February 25, 2023. (AR 31).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision and raises two issues:

1. Whether the ALJ properly considered Plaintiff's subjective complaints; and
2. Whether the RFC is supported by substantial evidence because it did not include limitations assessed by Dr. Sulier's medical opinion.

(Doc. 15 at 4-12).

## VII. DISCUSSION

### A. Plaintiff's Subjective Complaints

#### 1. Governing standard

An ALJ evaluates symptom testimony in two steps. First, the claimant must present objective medical evidence of an impairment that could reasonably produce the alleged symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The claimant need not establish that the impairment could produce the alleged severity of those symptoms; evidence that it could produce some degree of the symptoms is sufficient. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, absent evidence of malingering, the ALJ may discount testimony concerning symptom severity only by providing specific, clear, and convincing reasons. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General

findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The "clear and convincing" standard is the most demanding standard required in Social Security cases. *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

An ALJ need not "perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). A summary of medical testimony, without an explanation connecting that evidence to the rejected testimony, does not satisfy this requirement. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015); *Lambert*, 980 F.3d at 1278. Instead, the decision must explain the reasoning sufficiently to permit meaningful review. *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *Brown-Hunter*, 806 F.3d at 494 ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination."). The Court evaluates the reasons the ALJ supplied, recognizing that adequately explained inconsistencies may support discounting symptom testimony. *See Smartt v. Kijakazi*, 53 F. 4th 489, 499 (9th Cir. 2022).

2. Analysis

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; but her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 23). The decision does not identify a finding of malingering. Accordingly, the ALJ was required to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony.

Plaintiff argues the ALJ failed to identify Plaintiff's specific subjective complaints and provide clear and convincing reasons for rejecting those complaints. (Doc. 15 at 9-13).

a. Objective medical evidence

Defendant generally argues, without citing the decision, that the ALJ properly discounted Plaintiff's symptom claims because they were not entirely consistent with the objective medical evidence. (Doc. 17 at 5-6). Objective medical evidence is relevant to the evaluation of symptom severity and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2).

However, the only arguable support for this finding in the ALJ's decision is the chronological summary of the objective and clinical evidence of record. It is well-settled in the Ninth Circuit that "providing a summary of medical evidence … is not the same as providing clear and convincing *reasons* for finding the claimant's testimony not credible." *Lambert*, 980 F.3d at 1278 (emphasis in original) (citing *Brown-Hunter*, 806 F.3d at 494. Thus, to the extent the ALJ relied on inconsistency with the objective evidence to discount Plaintiff's symptom claims, it was not a clear and convincing reason supported by substantial evidence, especially since the ALJ acknowledged that the medical record supported shoulder-related restrictions. (AR 23).

b. Conservative treatment for back complaints

The ALJ characterized treatment for Plaintiff's back complaints as "very conservative." (AR 23). Conservative treatment may support discounting symptom testimony. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

However, an ALJ errs in rejecting subjective complaints if he "failed to explain why [the treatment] is routine or conservative or what more aggressive treatment was available and appropriate for Plaintiff." *See Candice C. v Saul*, 2019 WL 5865610, at *4 (C.D. Cal. Nov. 8, 2019). Here, the ALJ did not cite specific records supporting the "conservative" characterization or link that characterization to a particular symptom claim by Plaintiff. *See Holohan*, 246 F.3d at 1208; *Brown-Hunter*, 806 F.3d at 494. . Thus, the Court cannot conclude that this general reference to conservative treatment constitutes clear and convincing reason, supported by substantial evidence, to discount the entirety of Plaintiff's symptom claims including her claimed shoulder-related limitations.

c. Continued smoking

The ALJ also noted that Plaintiff continued smoking despite her asthma. (AR 23). The decision does not identify the asthma-related testimony that this conduct undermined, explain the asserted inconsistency, or cite evidence in the record that Plaintiff continued smoking against medical advice. "Ninth Circuit decisions also appear to disfavor an ALJ's consideration of a failure to quit smoking as a basis for rejecting a claimant's symptoms testimony." *Michael G.C. v. Comm'r of Soc. Sec.*, 2019 WL 6907790, at *6 (W.D. Wash. Dec. 19, 2019); *Steiger v. Colvin*, 2013 WL 1010453, at *3 (C.D. Cal. Mar. 13, 2013) ("it is unclear whether a failure to stop smoking can ever form the basis for" discounting symptom claims) (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (collecting cases).

d. Treatment history and physical therapy attendance

The ALJ cited Plaintiff's "limited mental health treatment" and two discharges from physical therapy for "issues with attendance." (AR 23). An unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment may support discounting symptom testimony, unless there is a showing of good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

The record reflects that Plaintiff was discharged from physical therapy for attendance issues in August and September 2024. (AR 25, 634, 650). As the ALJ also acknowledged, however, Plaintiff participated in therapy during the relevant period, and multiple providers reported that she was not benefiting from it. (AR 24-25, 371, 413, 427-40, 645).

Participation in some therapy and reports of limited benefit do not necessarily excuse missed appointments. Those circumstances nevertheless bear on the inference that may reasonably be drawn from nonattendance. However, the decision does not explain how Plaintiff's attendance history, considered in context, undermined her alleged lifting restrictions and need for breaks from left-arm activity.

Moreover, while the ALJ may reasonably consider Plaintiff's limited mental health treatment, this reason, standing alone, does not rise to the level of a specific, clear, and convincing reason to entirely discount Plaintiff's symptom claims during the relevant

adjudicatory period, particularly as to her claimed shoulder impairment.

e. Defendant's additional arguments

Defendant argues Plaintiff's shoulder pain improved with treatment and that her activities showed a level of functioning that contradicted her claimed limitations. (Doc. 17 at 6-7). Improvement with treatment and inconsistency with reported activities may be relevant to evaluating Plaintiff's subjective complaints. *See Tommasetti*, 533 F.3d at 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ may consider a claimant's activities that undermine reported symptoms). However, the Court is not permitted to consider these reasons because they were not specifically offered by the ALJ in the decision as a reason to discount Plaintiff's symptom claims. *See Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

B. Remaining assignment of error

Plaintiff also contends that the ALJ failed to explain why the RFC omitted assessed limitations by Dr. Sulier. (Doc. 15 at 4-8).

Because the ALJ's consideration of this issue is interrelated with the reevaluation of Plaintiff's symptom claims, including a review of the medical evidence as it relates to those claims and reassessment of the RFC, the Court need not resolve this challenge in detail here. On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims and conduct a new sequential analysis including reassessment of the RFC.

C. Remedy

Plaintiff requests remand for further administrative proceedings. (Doc. 15 at 13). Further proceedings would permit the ALJ to resolve the disputed extent of Plaintiff's functional limitations and reassess her ability to perform work. Remand for further proceedings, rather than an award of benefits, is therefore appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1103-04 (9th Cir. 2014).

On remand, the ALJ should reevaluate Plaintiff's symptom testimony, reconsider Dr. Sulier's opinion, and reassess the RFC. The ALJ should conduct a new sequential analysis as appropriate and obtain additional testimony from a vocational expert as necessary.

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. 15) be GRANTED.
2. Defendant's Cross Motion for Summary Judgment (Doc. 17) be DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the Commissioner's decision and REMAND this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

**NOTICE TO PARTIES**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id.*; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed fifteen (15) pages. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated: November 6, 2026

Helena M. Barch-Kuchta

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE